## THORNBERG

### v.

## JORGENSEN, et al.

### No. 4811

### Circuit Court of Appeals

Third Circuit

### July 11, 1932

*See, also, 60 F.2d 471 (same opinion), and 1 V.I. 617, 65 F. 2d 794*

GEORGE WASHINGTON WILLIAMS, Baltimore, Md., *for appellants*

ELDRED E. JACOBSEN and WILDER & JACOBSEN, all of Miami, Fla., NOLL & THIELE, of St. Thomas, Virgin Islands (DENZIL NOLL, St. Thomas, Virgin Islands, of counsel), *for appellee*

Before BUFFINGTON, WOOLLEY, and DAVIS, *Circuit Judges*

WOOLLEY, *Circuit Judge*

This appeal concerns broadly the right of a mortgagor under the law of the Virgin Islands to redeem property

sold under foreclosure proceedings, and involves particularly the questions, first, what was the law of the Islands in respect to the right of redemption in force at the time of the execution of the mortgages and at the time of sale, and next, if there were different laws at these times, which is applicable in this instance?

From the well pleaded case we extract these facts:

(a) In 1918, Svend Jorgensen executed in favor of N. W. Thornberg a mortgage for frcs. 75,000 ($15,000), being a first lien upon three estates, "Longford," "Castle Nugent," and "The Springs," situate in St. Croix, Virgin Islands, and upon livestock found thereon.

(b) At or about the same time Svend Jorgensen executed in favor of the Plantation Company of the Danish West Indies, Limited, Copenhagen, a mortgage for frcs. 55,000 ($11,000), being a second lien upon the same three estates and later assigned to O. H. Schmieglow of Denmark, and on his death distributed to his widow, Mrs. O. H. Schmieglow. The record of the mortgage shows payment of frcs. 10,000 on account, and the petition alleges other payments which have reduced the principal debt to less than frcs. 25,000 ($5,000).

(c) In 1919, Svend Jorgensen executed in favor of N. W. Thornberg another mortgage for frcs. 6,000 ($1,200), being a first lien upon the estate known as "LaPrevalois," and upon the livestock thereon.

After the death of Svend Jorgensen, the District Court of the Virgin Islands in 1924 awarded these four estates to his wife, Elinor Jorgensen, with full power of disposal.

(d) In 1927, Elinor Jorgensen executed a mortgage in favor of N. W. Thornberg for frcs. 23,700 ($4,740), being a lien upon all four estates, a third lien upon the three estates mentioned in the first and second mortgages (a & b) and a second lien upon the estate mentioned in the third mortgage (c).

Following default of interest, Thornberg filed in the District Court of the Virgin Islands a petition of foreclosure in the nature of a bill of foreclosure in equity against Elinor Jorgensen, as mortgagor and terre tenant of the four estates (a, b, c & d) and against the Plantation Company of the Danish West Indies, mortgagee under the second mortgage (b), and Mrs. O. H. Schmieglow, the present holder thereof, alleging a balance due upon the first mortgage (a) of frcs. 81,300 ($16,260), a balance of frcs. 6,722.50 ($1,344.50) due upon the third mortgage (c) and a balance of frcs. 25,870 ($5,174) due upon the fourth mortgage (d), together with costs and attorneys' fees, making a total in excess of frcs. 106,095.50 ($22,778.00).

Elinor Jorgensen appeared and contested the mortgage foreclosure.

The court appointed a receiver and later issued execution. This was in 1931. The estates and the cattle upon them were sold to Thornberg, the petitioning mortgagee, for frcs. 106,000 ($21,200). After exceptions by the respondent, Elinor Jorgensen, claiming a year within which to redeem the property, the court confirmed the sale and ordered a deed by the sheriff to the purchaser without right of redemption. From this decree of confirmation Elinor Jorgensen has appealed, raising several more or less related questions. The first is:

Did the local law in force in the Virgin Islands when the United States acquired them on the seventeenth day of January, 1917, grant to a mortgagor the right to redeem property sold under foreclosure of a mortgage within a period of one year from the date of sale?

This question is complicated not only by the usual disturbing problem of finding what local Danish laws remain in force in the Islands when "compatible with the changed sovereignty," 39 Stat. (1132, Act Mar. 3, 1917),

chapter 171 (§ 2, prec. 1 V.I.C.), Title 48 U.S.C. § 1392, but by the necessity of searching for the law in force before the acquisition of the Islands by the United States and finding it in human repositories — the memory of one-time Danish subjects — rather than upon statute books.

The appellant cites the Code of Christian V as authority for the right of redemption extended to Danish subjects residing in the Island of St. Croix. That code was in effect from 1646, about the time the Islands were being settled by the Danes, and expressly provided for redemption within a year and a day by the mortgagor of property sold under mortgage foreclosure. But the provisions of that code have through nearly three centuries been largely repealed, modified and supplemented. It is not shown whether the redemption feature was in force when the first two mortgages (a & b) were given Thornberg, and, more particularly, it is not shown that the Code of Christian V with its right of redemption was ever extended to the Virgin Islands.

The appellant relies more strongly upon the "Placard of April 22, 1817" issued by the King of Denmark. This placard deals mainly with the cancellation of a junior mortgage when the proceeds of foreclosure sale do not reach it, somewhat in the nature of our state laws which provide generally that a sale under a first mortgage discharges the lien of the second. It says nothing about a right of redemption but provides for "three auctions." This last feature was not, according to the record, raised by an exception to the sale or otherwise directed to the attention of the District Court, nor can we find it in an assignment of error. Anyhow, there is nothing in evidence that proves this placard was ever extended to the Virgin Islands.

There follows the Code of Civil Procedure of March

26, 1909, which, whatever its bearing, all admit was never extended to the Islands. Thus on the appellant's side there is no affirmative showing that a right of redemption existed under the law of the Virgin Islands at the time of the execution of the first and third mortgages (a & c). This leaves the appellant to her rights under the Code of St. Croix, passed by the Colonial Council on August 1, 1920 (published 1921), which expressly gives a mortgagor a right to redeem within a year. The citation of this law raises two other questions: One, whether it is retroactive and therefore embraces the first and third mortgages (a & c) previously given in 1918 and 1919; the other, whether it controls the sale under the fourth mortgage (d) subsequently given in 1927.

The appellee-mortgagee, having taken the negative side of the question of the right of redemption, cites and relies upon the Danish Act of 1916, a date prior to the execution of all mortgages in question, which, saying nothing about a right of redemption, provides that, within four weeks after sale an indefeasible title vests in the purchaser. Here, too, there is nothing of a record character to show that this Act was extended to the Virgin Islands and therefore to prove that the right of redemption was not within the Island law. We shall therefore disregard the Acts of 1817 and 1916 and turn to the evidence.

C. G. Thiele, Esquire, an attorney, long a resident of St. Thomas and learned in local law, was produced to state the law of the subject. After qualifying, he testified:

"That (I am) familiar with the law prior to the acquisition of the Virgin Islands in 1917 by the United States; that the Danish law in force in the Danish West Indies, now the Virgin Islands, prior to 1917, under the Danish regime, did not give to the mortgagee [sic] the right of redemption as is now provided for by the laws of the

Colonial Council for the island of St. Croix; (Act of 1920) [supra], that said Danish law giving no right of redemption was in full force and effect in the Danish West Indies at the time that the mortgages foreclosed upon herein were executed, except such mortgages as were executed after the year 1920."

Counsel then appearing for the contesting parties stipulated this transposition of the testimony into the record and over their signatures admitted that it "is a correct enunciation of the law as it existed in the Danish West Indies prior to the adoption of the Code of the Colonial Council in 1920."

Realizing the importance of this question to residents of the Virgin Islands we have given the matter serious study and a longer recital than ordinarily would be necessary in an opinion. We have, on permissible inferences drawn mainly from the negative showing on the part of the appellant and from the positive testimony of one learned in the law, admitted by counsel for both parties to be correct, reached the conclusion that the learned trial judge was right when he found that, under law which existed at the time of the execution of the first and third mortgages (a & c), the mortgagor had no right of redemption under local law, and that, if nothing else were involved, he committed no error when, acting on that finding, he directed the sheriff to convey the property to the purchaser.

There next followed discussion as to whether the enactment of the Colonial Council of the Island of St. Croix in 1920, which clearly gives a right of redemption, is void because made without "the approval of the President [of the United States], or under such . . . regulations as the President may prescribe." 48 U.S.C. § 1392.

■ ■ We do not find it necessary to discuss this question and decide whether or not the Act of 1920 is valid

612

because, if valid with respect to transactions subsequent to its enactment, it is not retroactive as to the first, second and third mortgages (a, b & c) under authority of State of Louisiana ex rel. v. Police Jury, 111 U.S. 716, 4 S. Ct. 648, 28 L. Ed. 574, and Barnitz v. Beverly, 163 U.S. 118, 16 S. Ct. 1042, 41 L. Ed. 93, construing and enforcing the inhibition of the Federal Constitution against the enactment of any law impairing the obligation of contracts (article 1, § 10). This constitutional provision, as well as that which prescribes that "no person shall . . . be deprived of life, liberty, or property, without due process of law" (Fifth Amendment), concerns constitutional rights of a natural or personal character and extends to these outlying territories of the United States within the rule of the Insular Cases. Soto v. United States (C.C.A.3d 1921) 1 V.I. 536, 273 Fed. 628; The Edgewood (C.C.A.3d 1922) 1 V.I. 548, 279 Fed. 348.

This is the answer to the second question involved in the case, which we shall make complete by saying that the act of the Colonial Council of 1920 is not applicable to or effective upon the fourth mortgage (d), though executed thereafter, because the foreclosure was of two mortgages (a & c), executed before the act and, being first liens upon the same properties covered by the fourth mortgage (d), the sale (if validly made) under those senior obligations, with their peculiar rights, discharged the liens of all junior mortgages without regard to rights which otherwise might attach to them. This is the answer to the third question.

This disposes of the main questions of law in the case and would dispose of the case itself were it not for two matters: One, the manner in which the sheriff sold the properties, and the other, its effect upon the rights of Mrs. Schmieglow (under her second mortgage) in the distribution of the proceeds.

613

As we have previously stated, the bill of foreclosure shows that her mortgage (b) is a second lien upon the three parcels of real estate upon which the first mortgage (a) is a first lien. It is not a lien upon the tract covered by the third mortgage (c). Though junior to the lien of the first mortgage (a) as to these three tracts, it is senior to the lien of the fourth mortgage (d) in respect to the same tracts, and, of course, has to be dealt with. Indeed, the plaintiff himself by his bill prayed: (7) "That the rights of any intervening mortgage-holder (evidently meaning Mrs. Schmieglow) and the amount due such intervening mortgage-holder be at the same time determined and decreed; (8) That any intervening mortgage-holder be required to appear by due process of law and make proof of his, her or its claim or thereafter stand forever barred and foreclosed in so far as this plaintiff is concerned."

Now the record — our sole source of legitimate information and the sole basis of our judgment — fails to disclose whether or not Mrs. Schmieglow was served with process and whether or not she appeared. It is certain she did not appeal. Nor does the record contain any decree entered in the foreclosure suit. Therefore the record does not show that any consideration was given or adjudication made in respect to Mrs. Schmieglow's second mortgage (b). With that mortgage duly registered, pleaded in the bill and by the bill admitted to be only partially paid, it can neither be destroyed by the bringing of the suit nor ignored by the Court in distributing the proceeds.

With this mortgage not disposed of and, so far as the record shows, with no decree on the bill and answer, the next thing the record reveals is execution process directing the sheriff to make the amount of the judgment out of the four properties and cattle covered by the three mortgages (a), (c) and (d). And, finally, there is a de-

cree confirming the sale, approving the receiver's account and directing that the property pass to the purchaser without right of redemption. This, we surmise from one of its expressions, includes the distribution of the proceeds of the sale, excluding Mrs. Schmieglow.

This we hold was error because somewhere, sometime and in some manner her mortgage rights should have been adjudicated, or should have been respected in the distribution of the proceeds of the sale. So far as we can tell from the record her rights have not been adjudicated, and she has been left out of the distribution. We thought, at first, that the decree of the District Court could be modified so as to preserve her rights in the distribution, but we found, because of the manner of sale and overlapping liens, that could not possibly be done. The properties were sold first in parcels and next as a whole, and the latter, bringing the highest bid (frcs. 106,000 — $21,-200), was accepted. Whether a sale of several tracts of mortgaged premises in bulk is, contrary to general law, valid under local law in the Virgin Islands we have not been informed. On that question we make no general ruling. We do say, however, whether a valid or invalid manner of making sale of several tracts in other situations, it is a wholly impracticable and therefore an unlawful way of selling several tracts against which different parties hold liens in different priorities. It is impossible to decide what part of these bulk proceeds of sale — in amount larger than the debt and interest of the first mortgage (a) — was applicable to the sale of the three tracts on which the plaintiff's first mortgage (a) and Mrs. Schmieglow's second mortgage (b) are liens. Accordingly it is impossible to tell whether any balance over and above the debt and interest on the first mortgage (a) existed, and if any existed, how much of it was applicable to the payment of the principal and interest of the second

mortgage (b). It is similarly impossible to tell what part of the bulk proceeds are attributable to the purchase of three of the properties covered by the fourth mortgage (d) against which the mortgage (b) of Mrs. Schmieglow is a prior lien.

As Elinor Jorgensen has a right to an adjudication of her mortgage obligation to Mrs. Schmieglow and accordingly a right to a proper application of the proceeds of the sale of her mortgaged property to that debt, we are, on this single error, constrained to reverse the "judgment on rule for confirmation to tax cost of receiver and sheriff and to show cause why in the confirmation of said sale it should not be decreed that the property pass to the purchaser without right of redemption," and direct that the District Court, proceeding with the case conformably with this opinion, determine the mortgage rights of Mrs. Schmieglow and the mortgage liability of Elinor Jorgensen under the second mortgage (b) in a manner consistent with local law; that, if moved by the plaintiff, it may order a sale of the differently encumbered premises to be conducted so that the bid made and the price paid for each parcel of land and incidental cattle shall be discernible; and that after confirmation of the sale it distribute the proceeds thereof to the different mortgagees according to the priorities of their mortgage liens.